Mr Justice Stciry
 

 delivered the ^opinion of the Court.
 

 This is an appeal in a suit in equity -from a. decree-of the circuit court of. the district of Columbia, sitting for the county of Washington.
 

 . Georgetown , was erected into a town-by-an act of the legislature of Maryland, passed in 1-751, ch. 25. By subsequent acts additions were made. to die territorial limits of the town; and the town was. created a corporation, with the usual municipal officers, by. an act of the Maryland legislature,.passed in 1780, ch.- 23. The charter of incorporation has been subsequently amended by congress, by. various acts passed upon the subject-since the cessioh.
 

 In the year 1769, Charles. Beatty and George F. Hawkins laid out/a town, known- by the-name of Beatty and Hawkins’s addition-to Georgetown; and which is now included within its corporate limits. The lots of this addition were disposed'
 
 *579
 
 of by way of lottery, under the direction of commissioners appointed to lay out the «ame, and conduct the' drawing of the lottery. The books of the lottery and the plan pf ¡the lots, and a-Connected survey thereof, were afterwards, by act passed in 1796, ch. 54, ordered to be recorded in -the clerk’s Office for the territory'of Columbia, and copies thereof to be good, evidence in all courts of law and equity in the state. Upon the original plan so recorded, one lot was marked out and inscribed with these words, “ for -the Lutheran church and' this, lot was in fact part of the land of which Charles Beatty was seised;
 

 The bill was brought up by the original plaintiffs, alleging themselves to be trustees and and1 agents for the German Lutheran church composed of the members of the German Lutheran church of Georgetown, duly organized as such,
 
 in behalf , of themselves and the members of the said church.
 
 It charges the laying-out of the lot in question for the sole use and benefit of the Lutheran church, to be held by them tor religious purposes and the nse of the congregation, as above* mentioned. . That sobn afterwards the lot' was taken possession of by the said German Lutherans in Georgetown; who organized themselves into a. church or congregation, and erected a church or house of worship thereon; and the lot. was enclosed by them and° a church erected thereon; and hath been kept and held by them during a period.of fifty, yéársyand hath been, used" as a burying ground for the members of the church, with the avowed intention of building thereon another church or place, of worship, the.first building erected thereon being decayed, whenever their funds would enable them so to do. That during all this period their1 possession has never been questioned, and the lot has been exempted from taxation as property set apart for d religious purpose. It further charges that upon the organization of the church or congregation, certain officers, called'a committee and trustees, were appointed to take care-of the said churchy which appointments have been from time to tpnerehewed; that in 1824 the plaintiffs were re-appointed as such, having been so appointed at former timesl- It further charges that Charles Beatty died about sixteen, years ago,
 
 *580
 
 without having made any. conveyance of the said lot, and that Charles A. Beatty, the. defendant, is. his heir,. and has the title by descent; and prays-that he may be compelled to convey it to them. It frirther charges that Ritchie, the other.defendant, has unwarrantably disputed their title; arid has entered upon the lot arid removed some of the tomb stones erected thereon, and means to dispossess the plaintiffs arid to remove the tomb stones arid1 graves. The bill therefore prays that they may be. quieted in their possession, and that, a writ of injunction may issue, and for further relief. ■ .
 

 The defendants put in a joint answer. They admitted that the lot was so inarked in the plot as .the bill states,- arid that it was Chalíes Beatty's intention to appropriate the same to the use of the.Lutheran congregation;, provided they would build thereon, within a. reasonable time, a' house of public worship. They deny that the German Lutherans were ever organized; as stated in the bill; or that any such church has been built; or that there has been any such possession Or. ericlosure as the bill asserts; or that Charles Beatty ever made, any conveyance of the. property to transfer his title.' They admit that the lot has been used as a grave yard; but not exclusively appropriated to. thé use of the Lutheran congregation. They admit that a building was erected theréob, but that it was used as a school house. They admit that the defendant, Beatty, is heir at law, and as such, that he claims the lot in question, and has authorized the defendant, Ritchie, to take possession thereof. They deny all the equity in the bill, as well as the authority of the plaintiffs to sue;, declaring them to he mete, volunteers; rind demanding proof of their authority, &c.
 

 The general replication was filed, and thé cause came on for a hearing upon the bill, answer, exhibits and depositions; and the court decreed a perpetual injunction against, the defendants, with costs. The; appeal is brought from -that decree.
 

 Upon examining the evidence, it appears to us that the riaaterial allegations of the bill are satisfactorily established. It is proved that, shortly after the appropriation, and more
 
 *581
 
 than fifty years ago, the Lutherans of Georgetown proceeded to erect a log house,on the lot,tvhich was used as a church for public worship, by that denomination of Christians ; and was also, occasionally, and at different times since, used as a school 4iouse under their direction.. That at a much later period, a steeple and bell were added to the building; that the land was used as a church yard; that á sexton appointed by Lutherans.had the direction of it; that more than half of the lot is covered with graves; and others as well as Lutherans have been buried there; that the Lutherans have caused, the lot to be enclosed from time to time, as the fences fell into decay, and procured subscriptions for that purpose; that.the possession of the Lutherans, in the manner in which, it was exercised over the lot, by erecting, a house, by públic worship, by enclosing the-ground, and by burials, was never questioned by Charles Beatty in his life time, or in.any manner disturbed "until.a short period before the commencement of the present suit. That Charles Beatty in his life timé constantly avowed that the lot was appropriated for the Lutherans, and that they were entitled to it.
 

 The Lutherans have constituted but a small humbér in the town.of Georgetown; they have not been able, therefore, to maintain public worship constantly in the housetse erected, during the whole period;, and sometimes it has been in-termitted,for a considerable length of time. But efforts , have been, constantly made, as far as practicable, to. keep together a congregation, to.use the means of divine worship, and to support publie preaching. „ The house, however, in consequence of inevitable decay, fell down some time ago,; the. exact period of which,, however, does not appear; but it seems to have been moré than forty years after its first erection. Efforts have since been made to rebuild it,, but hitherto they have not been successful.
 

 , - The Lutherans in Georgetown, who. have possessed the lot in question, are not and never have been incorporated as a,religiqus. society. The congregation has consisted of .a . voluntary society,acting in.its general arrangement by committees and trustees, chosen-from time to time by the Lutherans 'belonging to . it. There do not appear to have been
 
 *582
 
 any. formal records kept of their proceedings; and there have beem periods of considerable intermission in their Appointment and action. There is no other proof that the plaintiffs are á committee of the congregation, than what ariSes from the statement of witnesses, that they were sp cHosteh by. a •meeting of Lutherans, and that their appointment has always been: .acquiesced in by the Lutherans, and, they have assumed to. act. for them without any question of their, authority; that they are the.mselyes Lutherans, living in .Georgetown, and forming a part of the voluntary society, is not disputed/
 

 There is decisive evidence also that the defendant .'Beatty has, , sinée the decease of his. father, repeatedly admitted the claim of the Lutherans to the lot, and his .willingness, that it. should remain for them, as it had been Originally: appropriated. No assertion of ownership was evér made by him, until the acts were committed, which form the gravamen, of the. present bill.
 

 Such are thé matérial facts; and the principal questions arising upon this posture of the case, are? first, whether, the title to the lot in . question ever passed from Charles Beatty, so far at least.as to amount,to a perpetal appropriation of it to the use of, the Lutheran chuich, or to; the pious juses to which it has been in fact appropriated. And secondly, if so, whether it is Competent for the plaintiffs; to, maintain/the present bill.
 

 As to the, first question; it is. not disputed that Charles Beatty did originally intend that this lot. should be appropriated for the Use of a Lutheran church in the ■ town laid off fey .him,- But as t-heie was not at that, time any -church, either, corporate or- unincorporated, of that denomination in that town; there, was no grantee capable .of taking the same, immediately by- grant. Nor . can any- presumption of a grant arise .front the subsequent lapse of timp, since , there never has been any such incorporated Lutheran church there capable of-taking, the donation. If, therefore,, it were necessary that there «hould be a grantee legally1 capable of taking,.. in order to support the donation in this-case;' it would be utterly/void at law, and the land might be resumed at-plea
 
 *583
 
 sure. To be sure* if an unincorporated society-of Lutherans.-had, upon the faith of such donation, built a church thereon, with the consent of. Beatty, that might furnish a strong ground why a court of .equity, should compel him to convey the same to trustees in.perpetuity for their use por at least to. execute a declaration of trust, that he and, his heirs should hold the same for their use. For such conduct would amount.to a contract with the persons so building the church, that he would; perfect the. donation in their favbur;.. and' a Refusal to'do it would be a fraud upon tnem, which a court of equity ought to redress. And if the town of Georgetown had been capable, of holding such a lot for such uses, there would be no difficulty in considering the'town as the. grantee, under such circumstances ; since the uses would be of
 
 a
 
 public and pious nature, bentScial to the inhabitants generally.. But it does, not .appear that Georgetown, in 1769, or indeed until its incorporation in 1789, was a corporation, so as to be-capable of holding' lands as an incident, to'its corporate powers.'
 

 If the appropriation, therefore; is to bd-deemed valid at all, it-must be upon other principles than those which ordinarily apply between grantor and grantee. And we think it may be-supported as. a dedication, of the lot to public and pious uses. The bill of rights of- Maryland gives validity to “any .sale, gift, lease Or devise of-any quantity of land, not exceeding two aerea, for a church, . meeting or other house of worship, and for .a burying ground-, which shall be improved, enjoyed or used only for such purpose.” To this extent, at least, it recognizes the doctrines of the statute of Elizabeth for charitable uses, under whiph it is. well known, that such leases would. be upheld, although there ware'no specific grantee or trustee. In the case of The Town of Pawlet
 
 vs.
 
 Clarke, 9
 
 Crunch,
 
 292. 331, this Court considered' cases of an appropriation or dedication of property to particular or religious uses, ,as an exception - to the general rule requiring a particular grantee; and like the dedication of a highway to -the pdblic
 
 (a)
 
 . There
 
 *584
 
 is. no pretence to say, that- the present appropriation was ever- attempted-to-be withdrawn by Charles Beatty during his life time,, and he- did not die until about sixteen yeafs ago.,'On the contrary, the original plan, and appropriation were constantly kept in view by all the legislative acts passed on the subject of this addition. . - The plan was required to be recorded as an evidence of title',, and its incorporation into the limits .of ..Georgetown had reference t.o it. We think then it might at'all- times have been enforced as a charitable and pious use, through the intervention of the government as parens patrias, by its attorney general or. other law officer, it was originally consecrated for a religious purpose; .it has become-adepository.of the dead; and it cannot now be resumed by the heirs of Charles Beatty.
 

 The next question, is as., to-the competency of the plaintiffs to maintain.the present suit. . If they were proved to be the regularly' appointed committee of a voluntary society of Lutherans, in actual possession of the. premises, and acting by their'direction to prevent adisturbance of. that po.sr session,, under, circumstances- like those ^stated in the bill, we do. not perceive ..any serióüs objection to their right to maintain the. suit, ft is a case; where no action., at law, gven if'one could be brought by the voluntary society, (whidh it would be difficult to maintain,) would afford ah adequate and; complete remedy. Tb's is not the case.of a mere private trespass; but a public nuisance, going to the irreparable injury of the Georgetown, congregation of Lutherans. The property consecrated to their ;use by á perpetual servitude or.easement, .is to be taken from them; the sepulchres of the dead are to be violated; the feelings of religion, and the sentiment of natural affection of the kindred and friends .of the deceased are to be wounded; and the memprials erected by piety or. love, .to the memory of tbé-good, are to be removed so as to leave no trace of the last hotiie of their ancestry to those who may visit the spot in future generations.. It cannot be that..such acts are to be
 
 *585
 
 redressed by the ordinary process of law. The remedy, must, be sought, if at all, in the protecting power of a court., of chancery; operating by its injunction to preserve, the ré“ pose of the ashes of the dead, and the religious sensibilices of the living.
 

 The only difficulty is whethér the plaintiffs have shown in themselves a sufficient authority, since it is not evidenced by any formal vote or writing. If it were necessary, to decide the case, on tins' point, we should incline to think-that, under all the circumstances it might be fairly presumed. But it is not necessary to decide the case bn this point; because, we think it one of those cases; in which certain persons, belonging -to a voluntary society; and haying a' common interest, may sue in behalf of themselves and, others having-the like interest, as part of the same society.; for purposes common to all, and beneficial to. all. Thus; some of the parishioners may sue a parson to establish a general modus, without joining all; .and some of the members of a voluntary society or company, when the parties are .very ■numerous, may sue. for an, account against others, without joining all
 
 (a)
 
 .
 

 . And upon the whole we are of opinion, that the decree of the circuit dourt ought to be affirmed with costs.
 
 (b)
 

 This, cause came on,to be héarcí on the transcript of- the record' from the circuit court of the United States, for the district of Columbia, holden in and for’the bounty of Washington, and was argued by counsel; on consideration whereof,, it is considered, ordered and decreed by this Court that the decree of the said circuit court in this cause be, and the same is hereby affirmed with costs.
 

 (a)
 

 See also Brown
 
 vs.
 
 Porter, 10
 
 Mass. Rep.
 
 03; Weston
 
 vs.
 
 Hunt, 2
 
 Mass.
 
 
 *584
 

 Rep.
 
 500 ; Inhabitants of Shapleigh vs. Gilmin, 13
 
 Mass. Rep. 190
 
 ; Barrard's case, 12
 
 Jac. C. P.
 
 2
 
 Mod. Ent.
 
 413.
 
 b.
 

 (a)
 

 а)
 
 Cooper’s Eq. Plead.
 
 40', 41';
 
 Mitf. PÍéád.
 
 146.
 

 (b)
 

 lf a iaymsmj by the dissolution of monasteries, hath a monastery in which there is a church, part of it, and he suffers the parishioners for a long'time to come there
 
 to
 
 hear divine 'service, and to use it as a parish church ; that shall give ¿jurisdiction to the ordinary to order the seats ; because ih'at now, in fact, it becomes the parish church, which before was not subject to the .ordinary: adjudged 12
 
 Ja. C.
 
 B.; Buzzard’s case, 2
 
 Mod. E.
 
 413. 6.