(Decided 8th January, 1869.)

---

## John L. Gilbert, and others, vs. David W. Arnold, and others.

### Equity Practice—Party in contempt—Right·of Appeal—Injunction.

To a bill for an injunction the defendants demurred, but subsequently withdrew their demurrer, and without leave of the Court filed an answer. The Court upon the bill and exhibits alone, ordered an injunction. Shortly thereafter the defendants paid the fine and the costs of the demurrer as ordered by the Court, according to the provisions of the 102d section of Article 16 of the Code of Public General Laws, and appealed from the order granting the injunction. HELD:

1st. That the defendants being in contempt by the non-payment of the fine and costs imposed by the Code, upon the withdrawal of the demurrer without leave of the Court, had no right to file their answer, and the Court was justified in passing upon the bill and exhibits without considering the answer.

2d. That inasmuch as the fine and costs were paid by the defendants before the appeal was taken, their answer will be so far considered by the Appellate Court, as to entitle them to the right of appeal from the order granting the injunction.

Although a Court of Equity will not grant an injunction to restrain a trespasser, merely because he is a trespasser, yet it will interfere where

the injury is irreparable, or where adequate and compensatory damages cannot be obtained by an action at law, or where the trespass goes to the destruction of the property in the character in which it has been held and enjoyed, or where it is necessary to prevent a multiplicity of suits.

APPEAL from the Circuit Court for Montgomery County, sitting in Equity.

The bill in this case filed on the 1st of February, 1867, by the trustees of Goshen meeting-house and others, members of the Methodist Episcopal Church, prayed an injunction against the appellants to restrain them, their agents and servants from using, occupying or in any manner interfering with the said meeting-house, except in a peaceable and orderly attendance at public worship, under the direction and guidance of the appellees Arnold and Hobbs, or of the duly authorized and regularly appointed ministers of the said meeting-house for the time being, according to the discipline of the Methodist Episcopal Church. On the 18th of February, the defendants filed their demurrer to the bill. The hearing of the case on demurrer was then postponed until the equity term of the Court in May following, when it was fully argued and submitted, and was held "*sub curia*" until the 16th of July. On that day the Court delivered its opinion, in which it expressed its determination to overrule the demurrer, and grant the injunction as prayed, having already prepared the order to that effect, bearing date the same day; but it was not filed at the time, "at the request of, and in courtesy to the solicitors for the defendants," they desiring "time to examine the practice of the Courts of Chancery as to their right to withdraw said demurrer, after the opinion of the Court was announced, and the order was passed, and file their answer to said bill;" the Court "not intending by said courtesy to give them any advantage by said delay, which would come in conflict with the rights of the complainants, as the proceedings were submitted, argued, considered and passed upon by the Court."

The defendants on the 17th of July, after the announcement of the Court's opinion, and the passage of the order for the injunction, without leave, filed an order to the clerk withdrawing their demurrer, and filed an answer. On the same day, the order of the Court overruling the demurrer, and granting the injunction, was placed on file by the Court. On the 20th of July the defendants paid to the complainants the sum of ten dollars and the costs of the demurrer, as ordered by the Court, according to the provisions of the Code of Public General Laws, Article 16, section 102, and on the same day entered an appeal from the order granting the injunction.

The cause was argued before BARTOL, C. J., NELSON, STEWART, GRASON, MILLER and ROBINSON, J.

*Robert J. Brent* and *George Peter,* for the appellants:

The ground taken by the Judge below, that after he had *orally* announced his opinion, the demurrer was to be considered as passed upon and could not be withdrawn, is at variance with the principle that a Court of Justice can only act by written or record proof of its action, and no verbal orders or opinions can be considered. *Scott vs. Fox,* 14 *Md.,* 388; *Carlysle vs. Carlysle,* 10 *Md.,* 440; *Code of Pub. Gen'l Laws, Art.* 16, *sec.* 110.

Besides, if it be admitted that the Judge had overruled, formally, the demurrer, his order must or should have been to answer over, and so he conceded the right of the defendants to answer upon the overruling of their demurrer. The record shows that though the Judge dated his opinions overruling the demurrer and granting an injunction, as of the 16th July, 1867, yet they were not, in *fact, filed* in Court until the 17th July, after the demurrer had been withdrawn and the answers filed.

The rule of pleading considers a demurrer as waived where an answer is filed; but in this case it was expressly with-

drawn. The effort of the Judge was virtually to make his order for an injunction retroact before it *was filed*, and thus deprive the defendants of the benefit of their answer on the hearing of the injunction bill. His order of the 17th of July, treated the demurrer as being "in effect overruled," and imposed a fine of ten dollars and costs, according to the provisions of the Code, Article 16, section 102. The Judge clearly erred in the matter of the demurrer being overruled and not withdrawn, and in supposing that the answers were not before him when he ordered the injunction. *Newcomer vs. Keedy,* 9 *Gill,* 267; *Mahaney, et al. vs. Lazier, et al.,* 16 *Md.,* 69.

The injunction was erroneously granted:

1st. Because the bill on its face failed to aver the identity of the rules, doctrines, &c., of the Methodist Episcopal Church, in behalf of whose ministers it was filed, with the society of Methodists referred to in the trust. The names of the associations were different, as shown by the bill. It is true, that it averred that the society of Methodists named in the trust was the Methodist Episcopal Church of the United States; but that was immaterial, if its doctrines and articles of faith and discipline had been changed.

So far from averring the identity of doctrines, rules and discipline, the bill asserted that "rules and discipline had from time to time been adopted."

2d. The bill did not on its face show a case of irreparable damage entitling the parties to an injunction. *Chesapeake and Ohio Canal Co. vs. Young,* 3 *Md.,* 480; *Herr vs. Bierbower,* 3 *Md. Ch.' Dec.,* 456.

3d. The answers being properly in, were to be considered, in so far as they were responsive to the allegations of the bill. *Hubbard vs. Mobray,* 20 *Md.,* 165; *Dorsey vs. Hagerstown Bank,* 17 *Md.,* 408; *Colvin vs. Warford,* 17 *Md.,* 433; *Wood vs. Patterson,* 4 *Md. Ch. Dec.,* 335.

The answers denied, positively, each and every material allegation tending to show that the complainants were entitled to participate in the trust.

*Alexander B. Hagner, Richard M. Williams* and *Richard J. Bowie,* for the appellees:

The appellants by withdrawing their demurrer without leave of the Court, were in contempt, and were not entitled to file their answer, until the contempt was purged; this was not done until the 20th of July, 1867, when the sum of ten dollars and costs, imposed by the Code, were paid to the appellees. Under these circumstances the answer could not be received, and this appeal should be dismissed. *Code of Pub. Gen'l Laws, Art.* 16, *sec.* 102; *Vowles vs. Young,* 9 *Vesey,* 173; *Hewitt vs. McCartney,* 13 *Vesey,* 560; *Anonymous,* 15 *Vesey,* 174; 1 *Daniel's Chan. Prac.,* 488, *and note; Johnson vs. Pinney,* 1 *Paige,* 646; *Rogers vs. Patterson,* 4 *Paige,* 450; *Ellingwood vs. Stevenson,* 4 *Sandf. Ch. Rep.,* 366.

If the Court should decline to dismiss the appeal, then the order appealed from should be affirmed. The cause is to be determined as presented by the bill, without reference to any averments in the answer. The averments of the bill on this appeal, whatever may be the real state of the case, must be taken as true. *Haight & O'Connell vs. Burr,* 19 *Md.,* 133.

The complainants have stated such a case as gives jurisdiction to a Court of Equity, and entitles them to an injunction, and the relief prayed for. The complainants, some of whom are the trustees of the meeting-house, successors of the original trustees named in the deed, sue for and in behalf of a large body of preachers and ministers belonging to the Methodist Episcopal Church, as well as for themselves, and it is well settled that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others. *Smith vs. Swormstedt,* 16 *Howard,* 302; *Robinson vs. Smith,* 3 *Paige,* 222; *Associate Reformed Church vs. Trustees of Theological Seminary,* 3 *Green Ch. Rep.,* 77.

Courts of Equity have jurisdiction to interpose by injunction, to preserve the rights of trustees, ministers and members of religious bodies, from acts of intrusion by unauthorized

persons, under circumstances like those disclosed in the bill. 1 *Spence's Equi. Juris.*, 672; *Germ. Cong. vs. Pressler*, 17 *La. An. Rep.*, 127; *Winnebrenner vs. Colder*, 43 *Penn. Rep.*, 244; *Beatty vs. Kurtz*, 2 *Peters*, 579; *Brunnenmeyer vs. Buhre, et al.*, 32 *Ill.*, 192; *Wiswell vs. First Cong. Church*, 14 *Ohio*, 30.

Equity will interpose by injunction to prevent a *multiplicity of suits* against the numerous defendants and their confederates, in respect of the repeated trespasses committed and threatened. *Eden on Injunction*, 257; *Mayor of York vs. Pilkington*, 1 *Atkyns*, 282; *Hyde vs. Ellery*, 18 *Md.*, 497; *Lucas vs. McBlair*, 12 *G. & J.*, 1.

The facts stated in the bill disclose a case of impending *irreparable injury* to the complainants and to the church, in the character in which it had previously been enjoyed, which cannot be adequately redressed or compensated at law. *Beatty vs. Kurtz*, 2 *Peters*, 584; *Bonaparte vs. Camden and Amboy R. R. Co.*, 1 *Bald. C. C. Rep.*, 206; *Baugher vs. Crane*, 27 *Md.*, 36; *McCreery vs. Sutherland*, 23 *Md.*, 480; *Davis vs. Reed*, 14 *Md.*, 156; *Herr vs. Bierbower*, 3 *Md. Ch. Dec.*, 457; *Shipley vs. Ritter*, 7 *Md.*, 408.

Even if a Court of law had jurisdiction in respect of the matters complained of, a Court of Equity would nevertheless interpose to protect the trust. 2 *Spence's Equi. Juris.*, 25; *Brunnenmeyer vs. Buhre, et al.*, 32 *Illinois*, 190; *Codd vs. Wooden*, 3 *Brown's Ch. Rep.*, 73.

The allegations in the bill place the defendants before the Court as wrong-doers without color of title. But if they could be considered as a seceding majority, the right of user and property remains with those who adhere to the old church organization, however few their numbers. *Wiswell vs. First Cong. Church*, 14 *Ohio*, 30; *Den vs. Bolton, et al.*, 7 *Halstead*, 215; *The People vs. Steele*, 2 *Barbour*, 414.

ROBINSON, J., delivered the opinion of the Court.

This cause was heard and submitted to the Court below, upon the demurrer to the bill of the complainants. It is

insisted, however, on the part of the appellants, that the demurrer was withdrawn and answer filed, before the order was passed overruling the same and granting the writ of injunction.

In the view we take of the case, this question is altogether immaterial. The 102d section of Article 16, of the Code, provides that a party withdrawing a demurrer without leave of the Court, "shall pay to the opposite party the sum of ten dollars and the costs thereof, and be in contempt until the said sum of money and costs are fully paid." Now, if the demurrer was withdrawn, it was without leave of the Court, and the defendants became liable, not only for the fine and costs, but are declared to be in contempt until the same "are fully paid." Being thus in contempt of Court, they attempted to file their answer to the bill, and their right to do so, is the first question to be decided.

It is laid down as a general rule, by LORD CHIEF BARON GILBERT, that a party in contempt is never to be heard, by motion or otherwise, until he has fully purged his contempt and paid the costs. *Gil. For. Rom.*, 102; 1 *Daniel's Chan. Prac.*, 488. And in *Lord Newman vs. Osbadiston*, 2 *Bro. P. C.*, 276, where a defendant was in contempt for not putting in his examination pursuant to an order of the Court, afterwards in order to avoid a writ of sequestration, moved that further process of contempt be stayed, upon his undertaking to pay in a week's time, what should appear to be due the plaintiff, but the Court refused to allow him to make the motion until he had cleared the contempt.

It was also held in *Hewitt vs. McCartney*, 13 *Vesey*, 560, that a mortgagor, defendant to a bill of foreclosure, being in contempt, could not move under the statute of 7 George II, chapter 20, for a reference to the master, to take an account of the principal and interest due; other authorities might be cited if necessary, all affirming the general principle, that a party in contempt will not be *heard by motion or otherwise*, until he has relieved himself of the contempt.

We are of opinion, therefore, that the defendants being in contempt, by non-payment of the fine and costs imposed by the Code upon the withdrawal of the demurrer, had no right to file their answer, and that the Court committed no error in passing upon the bill and exhibits, without considering the answer which had been filed. It does appear, however, that the fine and costs were paid on the 20th of July, before the appeal was taken, and the answer will therefore be considered in so far as to entitle the defendants to the right of appeal from the order granting the writ of injunction. The motion to dismiss the appeal must therefore be overruled.

But it is insisted in the next place, that assuming all the averments in the bill to be true, the complainants have a complete remedy at law for damages, and that no case is presented for the interference of a Court of Equity by writ of injunction.

The bill is filed by the Trustees of Goshen Meeting-house, and David W. Arnold and Gustavus W. Hobbs, in behalf of themselves as well as all the ministers and preachers of the Methodist Episcopal Church in the United States.

It alleges that Ignatius Pigman, on the 14th of August, 1790, conveyed unto certain trustees and their successors, a lot of ground containing one acre of land, "including a certain edifice built and set apart for Divine worship therein by a society of Christians, called Methodists." That since the execution of said deed, for a period of more than *seventy years,* the said "meeting-house" has been in the use and occupancy and under the control of the ministers and preachers of said society, "a voluntary, unincorporated, religious association."

That the trustees, complainants, are the regular successors of the trustees mentioned in the deed of trust, and that the said Arnold and Hobbs are the ministers and preachers duly appointed to have pastoral charge of said "meeting-house;" and that shortly after they had entered upon the discharge of their duties, the defendants and others in concert with them, *not members* of said *religious society,* commenced an

*unauthorized* and *unjustifiable* use and occupancy of said meeting-house, whereby they have *hindered, obstructed, interrupted* and *interfered* with said ministers in the due progress and prosecution of their duties.

That these disturbances have emboldened evil disposed persons to impede and obstruct the Gospel work of said ministers, by stirring up prejudices and hostility against them, threatening to take said church entirely from their control, &c. And that without the aid of a Court of Equity they will suffer an *indefinite continuance* of the burdens under which they labor, *irreparable mischief* to said *meeting-house,* and a *destruction* of the *same* in the *character* in which it has been held and enjoyed, &c.

Such are the material averments in the bill, and which in this appeal must be taken as true. Now we consider the law well settled, that although a Court of Equity will not grant an injunction to restrain a trespasser, merely because he is a trespasser, yet it will interfere, where the injury is *irreparable, or* where full and adequate relief cannot be obtained at law, *or* where the trespass goes to the destruction of the property in the character in which it has been held and enjoyed, *or* where it is necessary to prevent a multiplicity of suits. *White vs. Flannigan and others,* 1 *Md.,* 525 ; *Shipley vs. Roane,* 7 *Md.,* 408.

The wrongs complained of in this case are certainly not trespasses of an ordinary character, for which adequate and compensatory damages may be obtained by an action at law. They are continuing, tending to deprive the complainants of their rights in the future as in the past—subversive of the plainly declared purposes of the trust upon which this church was donated, and destructive of the character in which it has been held and enjoyed, "namely as an edifice set apart for divine worship by a society of Christians called Methodists." As such it has been held and used for more than seventy years, and here during all this period, the beneficiaries under this deed have been accustomed to worship in the form and

according to the doctrines of their distinctive religious faith, and shall it be said that wrong-doers without color of title, can take possession of a church thus dedicated to *pious uses*, obstruct and hinder ministers in the discharge of the duties of their holy calling, deprive members of rights secured to them under the solemn sanctions of the law, in a word, shall a trust like this be perverted, and a Court of Equity powerless to grant relief? unable to stretch forth its strong and menacing, yet protecting arm, and enjoin the perpetration of wrongs like these? That parties must seek redress in damages by an action at law? By what standard could damages be estimated in such a case; or what pecuniary compensation could atone for the invasion and loss of religious rights and privileges, which in all ages and countries, Christian men have justly reckoned beyond *all price.*

Moreover, if it be conceded that for such wrongs, parties have a full and adequate remedy at law, taking into consideration the number of beneficiaries entitled under this "deed of trust," to what vexatious litigation and recuring multiplicity of suits, would such continuing acts of trespass inevitably lead!

In any aspect, therefore, in which this case may be viewed, assuming all the averments in the bill to be true, we are of opinion that the complainants are entitled to the relief prayed. And such seems to be the uniform tenor of decisions in this country. *Beatty & Ritchie vs. Kurtz, et al.,* 2 *Peters,* 579; *Winnebrenner vs. Colder, et al.,* 43 *Pa.,* 244; *Brunnenmeyer vs. Buhre, et al.,* 32 *Illinois,* 192, and *Wiswell vs. First Congregational Church,* 14 *Ohio,* 30.

In regard to the supposed merits of this case, which were discussed with so much earnestness, by the respective solicitors, we express no opinion. They can only be considered when the answer is filed, and upon motion to dissolve the injunction.

*Order affirmed and cause remanded.*

(Decided 12th January, 1869.)

STEWART, J., dissented.